DANIEL MAHER, Plaintiff in Error, v. THE PEOPLE, Defendants in Error.

ERROR TO LA SALLE.

A party may defend himself by taking life, whether his danger is real or not, if the danger is apparently so imminent and pressing that a prudent man might suppose himself in such peril, as to deem the taking of the life of his assailant necessary to self-preservation.

THIS was an indictment for murder. A motion to quash the indictment was overruled by the court.

The facts of this case are substantially as follows:

The parties came to the house of deceased in the same wagon, and supped together at the house of deceased. They were neighbors, living about half a mile apart, and in some degree related. The witnesses were the children of deceased. The prisoner and deceased came to the house of deceased about sundown. Both were intoxicated. While at supper, deceased undertook to whip his wife and children with a horsewhip; defendant interfered, and a scuffle ensued. They then agreed to adjourn the fight until next day. They shook hands, and defendant started off. After he got out of the inclosure, he picked up a club; deceased picked up a mop-handle; which took a club first, does not appear. Defendant turned once or twice as he was going away, had angry words with deceased; no proof what the words were, except that deceased said that he did not want him and his wife around him any more—to clear off the place. Prisoner said he had made free to eat supper there. Defendant then started off, and hallooed, and said that the family helped deceased to whip him. Then deceased started after prisoner, with the mop-handle drawn; prisoner was then about twelve rods off, and going away. They came together, and blows were struck; who struck first, does not certainly appear; the mop-handle was found broken, and it seems that it must have been broken before deceased received the blow that caused his death. Dan. Maher, a son of deceased, saw the whole affair, and was sworn, but the People refused to ask him any questions.

Upon the return of the verdict of the jury, the defendant moved the court for a new trial, which motion was overruled by the court, HOLLISTER, Judge, presiding.

The plaintiff in error made the following assignment of error, viz.:

The court erred in overruling the motion to quash the indictment.

16

The court erred in refusing to allow the plaintiff in error to cross-examine Daniel Maher, a witness called and sworn by the prosecution, and in deciding that if plaintiff in error examined said Maher, it must be as his own witness.

The court erred in giving each of the instructions asked by the prosecuting attorney, severally.

The court erred in refusing to give the seventh instruction asked by the plaintiff in error, as asked, and in qualifying the same.

The court erred in qualifying the sixth instruction asked by the plaintiff in error.

The court erred in overruling the motion for a new trial.

GLOVER, COOK & CAMPBELL, for Plaintiff in Error.

W. BUSHNELL, States Attorney, for The People.

WALKER, J. On the trial of this cause in the court below, the defendant asked the court to give this among other instructions. :

" If James Maher made an attack upon the defendant with a deadly weapon, at a time when the defendant was going away from him, and the circumstances of the attack were sufficient to excite the fears of a reasonable person that the said James Maher intended to do the defendant some great bodily harm, and defendant acted under the influence of such fears, and at the time struck the said James Maher and killed him, such killing is neither murder nor manslaughter, but justifiable homicide, and the prisoner should be acquitted."

Which instruction the court refused to give as asked, but qualified it as follows :

" Provided the jury believe the defendant used no more force than was necessary to prevent such bodily harm."

This instruction as asked was not strictly accurate, as it should also have informed the jury, that the defendant must believe, from the surrounding circumstances, that the danger was real, and that he believed it was necessary that he should take the life of his assailant to preserve his own, or to avoid a great bodily injury. But when the qualification was added, this instruction became clearly erroneous. As it was given, and as it must have been understood by the jury, it deprived the defendant of the right of self-defense unless the danger was real and not apparent. This qualification lays it down as a rule of law, that an actual and positive danger must exist, before he could justify the killing. Although this is not the precise language employed, yet this is its manifest import, and the jury must have

so understood it. This court, in the case of *Campbell* v. *The People*, 16 Ill. R. 17, held that a person when threatened with danger, must determine from the appearances and the surrounding circumstances as to the necessity of resorting to self-defense. And that if the danger was apparently so imminent, and pressing, that a reasonable and prudent man would suppose that it was necessary to take the life of his assailant, to preserve his own, or to avoid the infliction of a grievous bodily injury, then the killing would be justifiable. It cannot be true, that a man, when menaced with what would appear to a reasonable mind to be imminent danger, should wait until it is determined to be real, before he can act. There is no question that the person menaced must act in perfect good faith, and believe that it is really necessary that he should destroy life, to avoid what appears to be a real and imminent danger. This doctrine was again announced in the case of *Schnier* v. *The People*, 23 Ill. R. 17, and is decisive of this question.

No other error is perceived for which the judgment should be reversed. But for the giving the instruction as it was modified, the judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*