## JOHN ROACH *et al*

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. INSTRUCTION—*assuming facts.* An instruction which assumes the existence of material facts in dispute in a criminal case, is calculated to mislead the jury, and is erroneous

2. SAME—*direction how to find, should be dependent on a state of fact, to be proved beyond reasonable doubt.* The direction at the end of an instruc-

| | |
|---|---|
| 77 | 25 |
| 155 | 35 |
| 77 | 25 |
| 171 | 479 |
| 77 | 25 |
| 182 | 418 |
| 77 | 25 |
| 187 | [4]247 |
| 77 | 25 |
| 92a | [6] 82 |
| 77 | 25 |
| 198 | [3]197 |

tion in a criminal case, to convict, should be made expressly dependent upon a given state of fact, established beyond a reasonable doubt by the evidence. Where an instruction concludes, " and the jury will find the defendants guilty," it will be calculated to mislead, and will be erroneous.

3. HOMICIDE—*danger need not be real to sustain a justification of self-defense.* In a prosecution for manslaughter, where the defendant seeks to justify the killing as in self defense, an instruction conveying the idea that the justification can not be sustained unless the danger was not only apparently imminent, but was actual and positive, is erroneous.

4. SELF-DEFENSE—*danger need not be real.* If a party is assaulted in such a way as to induce in him a reasonable and well-grounded belief that he is actually in danger of losing his life, or suffering great bodily harm, he will, when acting under such apprehension, be justified in defending himself, whether the danger is real or only apparent.

5. POSSESSION—*defense of, when justifiable.* Where a party is in the possession of a well by the permission of the owner, and has enclosed the same, it is not necessary that he should have the exclusive right to its use as against all the world, in order to repel by force an attempt to invade that possession. It will be sufficient if he has such right as against an intruder attempting to use the same.

6. WITNESS — *instruction as to credibility of impeached witness.* An instruction that, though numerous witnesses may have testified against the credibility and truthfulness of a particular witness, and the jury may believe, from the evidence, the general reputation of the witness for truth and veracity is bad, yet they *should not*, on that account, discredit his testimony, if they believe the same to be reasonable and consistent, and that the same is corroborated, etc., is erroneous, as invading the province of the jury to decide what weight the testimony of the witness was entitled to.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. C. G. BRADSHAW, and Messrs. STEVENSON & EWING, for the plaintiffs in error.

Mr. JAMES K. EDSALL, Attorney General, and Mr. J. W. FIFER, State's Attorney, for the People.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

John Roach and Patrick Roach, the plaintiffs in error, were indicted at the November term, 1874, of the McLean circuit

court, for manslaughter, in taking the life of John Byron Dunlap. The indictment contains three counts. The first count charges, in substance, that on October 10, 1874, in McLean county, the defendants unlawfully, feloniously and wilfully made an assault upon said Dunlap, with a knife held in the hand of John Roach, and upon the side of the left breast of said Dunlap then and there unlawfully, feloniously and wilfully did strike, cut, stab and thrust, giving to said Dunlap, then and there, with said knife, in and upon the left side of the breast, one mortal wound, of which he instantly died; then averring that said defendants the said Dunlap then and there, in manner and form as aforesaid, unlawfully, feloniously and wilfully did kill.

The second count is the same, only that it charges the same acts to have been done by John Roach, Patrick being present, aiding, abetting and assisting. The third count is the same, only it avers the killing to have been done with a club.

It appears, by the evidence upon both sides, that there was a controversy between the deceased and one Wilcox acting in concert with him, upon the one side, and the defendants upon the other, about the right of the former to take the water out of a certain well. or spring, for the purpose of watering stock, the defendants claiming to have a paramount right, the supply not being adequate for the stock of all parties.

Evidence was given, and not controverted, that Patrick Roach and one Maloy had previously dug out the well, or spring, so as to increase the supply; had put a fence around it, and the Roaches had been in the prior possession and use of it.

Nicolls, the owner of the land where the spring was, testified that, on the Friday before the homicide, one of the Roach boys called on him, and asked him if he had any objection to his (Roach) watering there. Witness said he did not care how many watered there. Roach then asked witness if had any objection to his digging the well deeper, and some one present asked who would have the right to the water. Nothing was

said about the exclusive right, but some one said he thought the one that fixed it up ought to have the first right. Witness replied that he thought so, too; and this was all that was said on the subject. Upon this, as the evidence shows, Patrick Roach, with the assistance of Maloy, dug the well deeper, and put a fence around it.

The evidence tends to show that, after the well was thus fixed up by Roach and Maloy, the deceased and Wilcox, on the occasion of the homicide, came early in the morning with stock for the purpose of watering them before the Roaches had watered theirs, and from this attempt a conflict ensued, in which clubs were used upon both sides. The theory of the defense was that, after the fight had been continued until Patrick was knocked down and disabled, John was assailed by the deceased and Wilcox, one of them having a rock in his hand, which was thrown at him (John) with great violence, and that, acting under a reasonable and well-grounded belief that he was in danger of losing his life, or suffering great bodily harm, he used his knife in self-defense.

Upon some questions of fact, there was a sharp conflict of evidence; but there was testimony tending to support the alleged justification, that the killing was in self-defense.

The jury found both the defendants guilty, and fixed the term of imprisonment in the penitentiary twenty years for John and one year for Patrick, and they sue out a writ of error from this court.

The court, on behalf of the People, gave to the jury the following instruction:

"1. The court instructs the jury that, in case of a mutual conflict, he who would excuse himself upon the ground of self-defense, must show that, before a mortal blow was struck, he had declined any further conflict, and retreated as far as he could with safety; and, therefore, if the jury believe, from the evidence, beyond a reasonable doubt, that the defendants and John Byron Dunlap and the witness Wilcox were en-

gaged in a mutual conflict, *all being equally willing to engage in said conflict, and upon equal terms as to being armed,* and that the defendants mortally wounded the said John Byron Dunlap while so engaged in mutual conflict, and without in any way having attempted to decline any further conflict *at the time said mortal stroke was given, in manner and form as charged in the indictment, and the jury will find the defendants guilty.*"

By this instruction, the court assumes the fact that all parties were equally willing to engage in the conflict, and that they were upon equal terms as to being armed. The same assumption is repeated in the eighth instruction.

This was calculated to prejudice the defendants. So far as the parties were armed with clubs, they were probably upon equal terms as to being armed; but the testimony tended to show that the Dunlap party seized a rock for the purpose of using it upon John Roach, and this fact was material upon the question of self-defense.

The last clause but one of the instruction assumes that the mortal wound was given in manner and form as charged in the indictment—that is, unlawfully, feloniously and wilfully.

This is contrary to the rule announced in various decisions of this court, and was erroneous. This instruction is unusually artful in its structure, and highly calculated to mislead the jury. The direction of the court to convict, at the end of the instruction, should be made expressly dependent upon their finding such and such facts established, beyond reasonable doubt, by the evidence. This is not so framed, but is made to appear so independent of any hypotheses, in the former part of it, as that it might mislead the jury into the error of regarding it as a positive direction from the court to convict. Beginning with a capital letter, it reads thus: "And the jury will find the defendants guilty."

Such a mode of instructing the jury, either in civil or criminal cases, can not receive the sanction of this court.

The court, on behalf of the People, gave the following instruction to the jury:

"9.    The court instructs the jury that, before the defendants, or either of them, can justify the killing of John Byron Dunlap, if the jury believe, from the evidence, and beyond a reasonable doubt, that the defendants did kill John Byron Dunlap, it must appear that the danger was so urgent and pressing that, in order to save their own lives. or the lives of one of them, or to prevent them, or one of them, from receiving great bodily harm, the killing was absolutely necessary; and it must further appear that John Byron Dunlap was the assailant, or that the defendants had really. and in good faith, endeavored to decline any further struggle before the mortal blow was given."

This instruction would convey to the minds of the jury the idea that the defendants could not sustain their alleged justification unless their danger was not only apparently imminent, but was actual and positive.    In *Campbell* v. *The People*, 16 Ill. 17, a similar instruction was given, and it was condemned, this court holding that, if the defendant was assaulted by the deceased in such a way as to induce in him a reasonable and well-grounded belief that he was actually in danger of losing his life, or suffering great bodily harm, when acting under such reasonable apprehension, he was justified in defending himself, whether the danger was real or only apparent. "Actual and positive danger," said the court, "is not indispensable to justify self-defense."

This doctrine was reaffirmed in the case of *Schnier* v. *The People*, 23 Ill. 17, and an instruction like the above was held to be erroneous.    So, also, is *Maher* v. *The People*, 24 Ill. 241, to the same effect.

On behalf of the People, the court gave the following instruction:

"12. The court instructs the jury that if they believe, from the evidence, beyond a reasonable doubt, that the defendants did not have the exclusive right to the use of the well on Nicoll's land, then they had no such right or property to the water in said well as would justify the defendants, or either of them, in opposing, by force, any person desiring or attempting to get water at said well."

This instruction had a tendency to mislead the jury. It was not indispensable to defendants' right to defend their possession of the well, or repel force with force, that they should have the exclusive right to the use of the well as against all the world. It would be enough if they had it as against the deceased and Wilcox.

The court also gave for the People the following:

"4. The jury are instructed that even though numerous witnesses may have testified against the credibility and truthfulness of the witness Wilcox, and even though the jury may believe, from the evidence, that the general reputation of said Wilcox for truth and veracity is bad, yet the jury *should not,* upon that account, *discredit the testimony of said Wilcox:* provided they believe the same to be reasonable and consistent, and that the same is corroborated by other credible evidence, and by the facts and circumstances otherwise proved in this case."

This instruction invades the province of the jury. The jury might properly have been instructed that they were at liberty, notwithstanding the impeaching evidence, if they found his statements reasonable and consistent, and corroborated by other credible testimony in the cause, to give to his testimony such weight as they thought it was entitled to, under all the circumstances in evidence. The credibility of witnesses is a matter exclusively for the jury. We had occasion to discuss this proposition and express our views in the

case of *Otmer* v. *The People,* 76 Ill. 149, where a similar instruction was held erroneous.

The judgment of the court below will be reversed and the cause remanded.

*Judgment reversed.*