Thomas J. Mackin

v.

The People of the State of Illinois.

*Opinion filed February 21, 1905.*

1. Criminal law—*right to kill in self-defense is not limited to real danger.* One who is assailed in such a manner as to induce in him a reasonable and well grounded belief that he is actually in danger of losing his life or suffering great bodily harm is justified in defending himself when acting under such apprehension, even to the extent of taking the life of his assailant, whether the danger was real or only apparent.

2. Same—*effect where party claiming killing was in self-defense was the aggressor.* One who is the aggressor and begins an affray in which he takes the life of another, cannot escape the consequences of the killing upon the ground that he acted in self-defense, unless he endeavored in good faith to decline further struggle before he inflicted the mortal wound.

Writ of Error to the Criminal Court of Cook county; the Hon. Theodore Brentano, Judge, presiding.

Gearon, Hall & Gearon, for plaintiff in error.

H. J. Hamlin, Attorney General, and John J. Healy, State's Attorney, (George B. Gillespie, Harry Olson, and Edmund Furthman, of counsel,) for the People.

Mr. Justice Hand delivered the opinion of the court:

At the May term, 1903, an indictment charging Thomas J. Mackin with the murder of Joseph P. Brett was returned into the criminal court of Cook county. A trial resulted in the conviction of Mackin and his sentence to imprisonment in the penitentiary for a term of fourteen years, and he has sued out a writ of error and relies on two grounds for a reversal: (1) That the evidence does not support the verdict; and (2) that the court misdirected the jury as to the law.

It appears from the evidence that on the 30th day of April, 1903, Joseph P. Brett, John McGuffin and Timothy Driscoll, at about ten o'clock in the forenoon, were in a saloon at 1245 Blue Island avenue, in the city of Chicago. They remained there drinking and amusing themselves with a music box. At about twelve o'clock the defendant entered the saloon. He did not know Brett, McGuffin or Driscoll, but went over where they were and said to McGuffin, "How do you do, pard?" and asked him who they were. McGuffin said they were hod-carriers and Mackin said he was a switchman. After exchanging a few remarks Mackin said to McGuffin he could lick him, and struck him. Brett said to Mackin he ought not to strike the man, whereupon Mackin struck Brett and knocked him down. McGuffin then knocked Mackin down, and the three, Mackin, Brett and McGuffin, were down in the saloon in front of the bar and were fighting and striking each other. John Hurley, the saloon-keeper, interfered and stopped the fighting, and the three got up and stood at or near the bar and proposed that they drink together, and the fight seemed to be over. They commenced, however, to quarrel again and soon commenced to fight, Mackin being the aggressor. Mackin and Brett had hold of each other and McGuffin and Driscoll were trying to strike Mackin. The room in which the saloon was located was about twenty feet wide and forty feet long. A screen ran part way across the front of the room about five feet back from the door, between which and the door was a cigar case and in the rear of which was the bar, which was about sixteen feet long, and in the rear of the bar were one or more tables upon which lunch was served. The water-closet was on the opposite side of the room from the bar, and the parties were fighting behind the screen between the bar and the water-closet. While the fight was going on Mackin drew from his pocket a revolver, he being the only one who, from the evidence, appears to have been armed. He first used it as a club and struck Brett on the head with it several times.

As the fight continued the parties gradually worked near the screen, and finally were between the screen and the door. During the fight one or more shots were fired. McGuffin finally wrested the revolver from Mackin and struck him with it several times. About the time McGuffin got the revolver away from Mackin the street door was opened and Mackin and McGuffin stepped or fell out upon the street. A police officer then arrived, and Mackin ran away and McGuffin was arrested. During the fight Brett was shot through the chest, from the effect of which he died within a few minutes after the fight was over. Mackin was soon arrested and admitted the revolver taken from McGuffin was his revolver, and said to the police officer who arrested him, on the way to the station, in speaking of Brett, "If the son of a bitch dies, throw him in the river." Four persons other than Mackin, Brett, McGuffin and Driscoll were present a part of the time during the affray, namely, Hurley, the saloon-keeper, Ryan and Kahlert, laborers, and Franklin, a cigar salesman, who testified upon the trial. Those who were present when the fight began all agreed Mackin commenced the quarrel and struck the first blow, and Kahlert, who came into the room just after the first encounter, swore Mackin, during the second struggle, knocked Brett down with the revolver and shot him while he was down. McGuffin testified to the same facts. Kahlert said the shooting took place in the rear of the screen. The other parties testified the shooting took place near the screen or in front of the screen. The parties engaged in the fight had all been drinking and were more or less intoxicated, and there was more or less excitement, especially after Mackin drew the revolver, and from the record it is not possible to determine just when the fatal shot was fired or where Mackin and Brett were at the time it was fired. It is clear, however, that Mackin commenced the quarrel; that he struck the first blow; that he drew his revolver and struck Brett with it on the head, and that during the fight Brett was shot and killed. The most that can be

said in exoneration of Mackin is, that it could have been urged before the jury with some force that he was guilty of manslaughter, and not of murder. The defendant admitted that he drew his revolver and used it as a club, but claimed that he did not fire it, but said in the scuffle to retain it, when McGuffin was attempting to wrest it from him, it went off. He also claimed that he drew the revolver, and did all that he did during the difficulty, in self-defense. If his testimony is true he, at most, was only guilty of manslaughter. On the other hand, if the testimony of McGuffin and Kahlert is true he deliberately shot and killed Brett after he had knocked him down with the revolver. The question of the guilt or innocence of the defendant was a question for the jury to pass upon in view of all the evidence in the case, and they having found the defendant guilty of murder we are not disposed to disturb their finding.

It is next contended that instructions 17 and 18 are defective, in that they informed the jury that the defendant did not have the right to take the life of Brett in self-defense unless the killing of Brett was absolutely necessary to save his own life or to protect him from great bodily harm. Those instructions are substantial copies of sections 148 and 149 of the Criminal Code. Since the decision in *Campbell* v. *People,* 16 Ill. 17, it has been held in this State that where a party is assailed in such a manner as to induce in him a reasonable and well grounded belief that he is actually in danger of losing his life or suffering great bodily harm, he will, when acting under such apprehension, be justified in defending himself, even to the extent of taking the life of his assailant, whether the danger is real or only apparent. If instruction No. 17 stood alone it would perhaps be subject to the criticism made thereon by the defendant. When it is taken in connection with instruction No. 18 it cannot be said to be subject to such criticism. Especially is that true when taken in connection with instruction No. 20, which laid down the law of self-defense as favorably to the defendant as the

law will permit. In *Kinney* v. *People,* 108 Ill. 519, the court gave to the jury an instruction which was a *verbatim* copy of sections 148 and 149 of the Criminal Code, and the same objection was urged against that instruction which is urged against instructions 17 and 18. The court reviewed the authorities and held the instruction contained a correct statement of the law of self-defense and approved the instruction.

It is next urged that instruction 26 is an erroneous statement of the law of self-defense. That instruction informed the jury if Mackin brought on the difficulty and was the first assailant he could not avail himself of the right of self-defense in order to shield himself from the consequences of killing Brett, however imminent the danger was in which he found himself during the progress of the affray, unless it appeared he in good faith had endeavored to decline any further struggle before the mortal shot was fired. We do not think the instruction subject to the objection made thereto. It was not given to the jury with a view to advise them fully upon the law of self-defense. That subject was covered by instructions 17, 18 and 20. The jury were fully instructed as to the crime of manslaughter, and informed they could find the defendant guilty of manslaughter if the evidence showed him guilty of that crime, and instruction 26 was not so framed as to advise the jury they could not find the defendant guilty of manslaughter, but was given with a view to inform the jury if the defendant was the aggressor and commenced the affray he could not be excused from the killing of Brett upon the ground of self-defense unless he had in good faith endeavored to decline any further struggle before he fired the mortal shot, and such is the law of this State. *Adams* v. *People,* 47 Ill. 376; *Kinney* v. *People, supra.*

The defendant has urged objections to other instructions which were given to the jury. We have carefully considered all the objections to the instructions pointed out by the defendant and are of the opinion such objections are not well taken, and that the case should not be reversed on the ground

that the court misdirected the jury as to the law, but are of the opinion the jury were fully and fairly instructed as to the law of the case.

The judgment of the criminal court of Cook county will be affirmed.                                  *Judgment affirmed.*