THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH McGINNIS, Plaintiff in Error.

*Opinion filed April 23, 1908.*

1. MURDER—*a man need not be reasonably brave or courageous before he can act in self-defense.* One who takes his assailant's life may make out a case of self-defense by proving that there was induced in him, by the conduct of the assailant, a reasonable and well grounded belief that he was at the time of the killing in apparent danger of losing his life or suffering great bodily harm, and he is not required to show that he acted as a man of "ordinary judgment and courage" or as "an ordinarily courageous man" would have acted under the circumstances.

2. SAME—*court should not intimate that defendant's fear was cowardly.* Whether the defendant killed his assailant while acting under the fears of a reasonable person or those of a coward is not a question for the court, and the court should not intimate in its instructions that the defendant was a coward and that in consequence of such cowardice he fired the fatal shot.

3. SAME—*the court should not refer to defendant's defense as a "claimed" defense.* Where the facts in a prosecution for murder are close, it is improper for the court, in its instructions, to refer to the defense interposed by the defendant as "what is claimed to be this self-defense."

4. SAME—*the jury should not be told to consider defendant's demeanor during the trial.* In a prosecution for murder, where the evidence is close and the verdict must depend upon the weight given to the defendant's testimony, it is reversible error to instruct the jury that in determining the credit to be given to the defendant's testimony they might consider his conduct and demeanor "during the trial."

5. CRIMINAL LAW—*defense of former acquittal cannot be raised by motion in arrest of judgment.* In a prosecution where there are several counts for murder and one for manslaughter, if the State's attorney enters a *nolle prosequi* as to the manslaughter count but the jury find the accused guilty of manslaughter under the murder counts, the accused cannot, on motion in arrest of judgment, make the defense that the *nolle prosequi* was equivalent to a verdict of not guilty of manslaughter and amounted to a former acquittal on that charge.

6. SAME—*entry of nolle prosequi is not equivalent to a verdict of not guilty.* The entry of a *nolle prosequi* as to the manslaughter

count of an indictment for murder is not equivalent to a verdict of not guilty of the crime of manslaughter upon the remaining counts of the indictment, and in case a judgment of conviction of the crime of manslaughter upon the murder counts is reversed by the Supreme Court and a new trial awarded the accused may be tried for manslaughter under the murder counts.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. JOHN A. GRAY, Judge, presiding.

NEECE & ELTING, CLIFFORD W. WARNER, and WILLIAM H. HARTZELL, for plaintiff in error.

W. H. STEAD, Attorney General, and GEORGE V. HELFRICH, (DAVID E. MACK, of counsel,) for the People.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The plaintiff in error, Joseph McGinnis, at the October term, 1907, of the Hancock county circuit court, was indicted by the grand jury of said county for the unlawful killing of Bradford Huston. The indictment contained five counts. The first, second, third and fifth charged murder, and the fourth, manslaughter. The defendant entered a plea of not guilty. After the evidence was all in, the State's attorney, by leave of court, entered a *nolle prosequi* to the fourth count, and the jury returned a verdict of manslaughter upon the remaining counts of the indictment, upon which verdict the court, after overruling motions for a new trial and in arrest of judgment, sentenced the defendant to the penitentiary, and a writ of error has been sued out by him from this court.

It appears from the record that the plaintiff in error was an unmarried man, about fifty-seven years of age. He had been admitted to the bar of this State and had served one or more terms as a justice of the peace in Hancock county. Some two years before the killing of Huston he

had assisted the State's attorney of Hancock county to prosecute Huston upon a criminal charge, upon which Huston was convicted and incarcerated in the penitentiary. Huston, after his arrest and conviction, entertained a violent hatred toward the plaintiff in error and frequently threatened to kill him, some of which threats were communicated to the plaintiff in error prior to the killing of Huston. Huston was a man of violent temper and of bad character, and while the plaintiff in error at times used intoxicating liquors to excess, he was, even when intoxicated, peaceable and quiet. On the afternoon of Sunday, May 12, 1907, the plaintiff in error went to the house of Joseph Dodds, in LaHarpe, in Hancock county. He there met Dodds, who lived alone, and a number of other men, including Bradford Huston. They all drank intoxicating liquors while at Dodds' house, to some extent, and all became more or less under the influence of intoxicating liquors. While at Dodds' house Bradford Huston said it would be a good time for him to settle with McGinnis. Dodds remonstrated against Huston having any trouble with McGinnis, and they had no quarrel at Dodds', but after some talk they took a drink, shook hands and agreed to be friends. Early in the afternoon Huston went to a livery stable to get a rig to take Mrs. Nelson and her three children, who lived about sixty feet from the house of Dodds, to Stronghurst, a village situated some sixteen miles from LaHarpe, where the husband of Mrs. Nelson was at work. After Huston left Dodds' house plaintiff in error went to the house of Mrs. Nelson, of which he had charge for her landlord, to get the key to that house or another house which he had charge of in that vicinity. The boy of Mrs. Nelson, who was ten years old, got the plaintiff in error a drink from the well, and the plaintiff in error then went into the house, which was a small three-room house, and sat down in a rocking chair in the main room, near the west door, and was talking to Mrs. Nelson and her children. After he had been in the house a few min-

utes Huston returned with a horse and buggy, in company with a man by the name of Shaw, who had been at Dodds' house early in the day, drinking with Dodds, McGinnis, Huston and others. Huston tied the horse and he and Shaw went to the house of Mrs. Nelson. Huston entered the house, Shaw remaining near the door, outside. There is no conflict in the evidence up to the time Huston entered the house of Mrs. Nelson. Shaw was not called as a witness, and the only eye-witnesses to what took place in Mrs. Nelson's house after Huston entered, who testified as witnesses upon the trial, were Mrs. Nelson, Horace Nelson and the plaintiff in error. Within a few minutes after Huston entered the house of Mrs. Nelson the plaintiff in error fired two shots from a thirty-two calibre revolver at him, one of which entered his body a little to the left and immediately above the navel and passed diagonally through his body and lodged in his back, after passing through the lower part of his right kidney. The other shot did not take effect. After the shooting Huston left the house and was taken down-town by Shaw and a man by the name of Wallace, to a livery stable, where he died from the effect of the revolver shot, about four o'clock of the same afternoon. Immediately after the shooting plaintiff in error went down-town and admitted the shooting and gave himself up to an officer.

If the testimony of Mrs. Nelson and the boy, Horace, is to be believed, the shooting of Huston was without excuse and wholly unjustifiable. On the other hand, if the testimony of plaintiff in error is to be believed, he acted in self-defense and was justified in taking the life of Huston. In that state of the record the plaintiff in error was entitled to have the jury correctly instructed as to the law of self-defense.

It is assigned as error that the court erred in giving to the jury, upon behalf of the People, upon the subject of self-defense, the eleventh, thirteenth and fourteenth instructions, which read as follows:

11. "The court instructs the jury that although you may believe, from the evidence, that the defendant, McGinnis, honestly believed that his life was in danger or that he was in danger of suffering great bodily injury, and that, acting under such belief, he slew the deceased, Bradford Huston, yet if you further believe, from the evidence, beyond a reasonable doubt, that there was no reasonable grounds for such belief and no such apparent danger as would have led a reasonable man of ordinary judgment and courage under the same circumstances to apprehend such danger, then you should find the defendant guilty.

13. "In considering whether the killing was justifiable on the ground that the killing was in self-defense, the jury should consider all the circumstances attending the killing, the conduct of the parties at the time and immediately prior thereto, and the degree of force used by the prisoner in making what is claimed to be this self-defense, as bearing upon the question whether the shots, if fired, were actually fired in self-defense or whether they were fired in carrying out an unlawful purpose; and if the jury believe, from the evidence, that the force used was unreasonable in amount and character, and such as a reasonable mind would have so considered, under the circumstances, it is proper for the jury to consider that fact in determining whether the killing was in self-defense.

14. "The court instructs the jury that if a man kills another through mere cowardice, or under circumstances which are not, in the opinion of the jury, sufficient to induce a reasonable and well grounded belief of danger to life or of great bodily harm in the mind of an ordinarily courageous man, the law will not justify the killing on the ground of self-defense."

The criticism made upon the eleventh and fourteenth instructions is, that they require the jury to believe that the plaintiff in error acted as a man of "ordinary judgment and courage" and as an "ordinarily courageous man" at the time

he shot Huston before he could avail himself of the right of self-defense, although he "honestly believed that his life was in danger or that he was in danger of suffering great bodily injury, and that, acting under such belief, he slew the deceased, Bradford Huston;" and the further criticism is made upon instruction No. 14, that it characterizes the conduct of plaintiff in error in shooting Huston as an act of cowardice; and the criticism made upon instruction No. 13 is, that it characterizes the defense of the plaintiff in error as "what is claimed to be this self-defense."

Section 148 of the Criminal Code of this State declares that before a defendant can avail himself of the right of self-defense as a justification for the taking of human life, "it must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." In some jurisdictions it is held that where a man acts upon appearances he does so at his peril, and that the circumstances must have been such as would induce a reasonably cautious man to believe that he was in imminent peril and that it was necessary for him to kill his assailant in order to save himself from death or great bodily harm; while in other jurisdictions it is held that the circumstances must be viewed from the standpoint of the defendant alone, and that he will be justified or excused in killing his assailant if they were sufficient to induce in him an honest and reasonable belief that he was in danger of losing his life or suffering great bodily harm. (21 Cyc. p. 817.)

*Campbell* v. *People,* 16 Ill. 17, is a leading case upon the right of self-defense in this State. Judge Caton, in that case, on page 19, said: "If the defendant was pursued or assaulted by the deceased in such a way as to induce in him a reasonable and well grounded belief that he was actually in danger of losing his life or suffering great bodily harm, when acting under the influence of such reasonable appre-

hension he was justified in defending himself, whether the danger was real or only apparent.  *  *  *  Men, when threatened with danger, are obliged to judge from appearances, and determine by the actual state of things, from the circumstances surrounding them, at least as much as if placed in other and less exciting positions; and it would be monstrous to say that if they act from real and honest conviction, induced by reasonable evidence, they shall be held responsible, criminally, for a mistake in the extent of the actual danger, where other reasonable and judicious men would have been alike mistaken."

In *Schnier* v. *People,* 23 Ill. 17, on page 28, Judge Walker said: "It is not to be expected nor can it be required of men menaced with apparent, imminent and unavoidable danger, that they will act with that deliberation and cool circumspection that men do under ordinary circumstances. They cannot be expected to resort to and fully test every means that may remotely promise safety, but at the same time they must be held to employ all means for their escape that to a reasonable understanding would seem to promise safety, before they can be justified in slaying their antagonist. But if the danger seems to be so imminent and pressing as to a reasonable mind would seem, under the circumstances, to afford no other mode of escape, then the slaying would be justified although the danger was only apparent."

The doctrine above announced has been approved by this court in *Maher* v. *People,* 24 Ill. 241, where, on page 243, it was said: "If the danger was apparently so imminent and pressing that a reasonable and prudent man would suppose that it was necessary to take the life of his assailant to preserve his own or to avoid the infliction of a grievous bodily injury then the killing would be justifiable;" also in *Adams* v. *People,* 47 Ill. 376, *Davis* v. *People,* 88 id. 350, *Steinmeyer* v. *People,* 95 id. 383, *Kinney* v. *People,* 108 id. 519, *Walker* v. *People,* 133 id. 110, and in many other cases.

And in the late case of *Mackin* v. *People,* 214 Ill. 232, on page 235, the court said: "Since the decision in *Campbell* v. *People,* 16 Ill. 17, it has been held in this State that where a party is assailed in such a manner as to induce in him a reasonable and well grounded belief that he is actually in danger of losing his life or suffering great bodily harm, he will, when acting under such apprehension, be justified in defending himself, even to the extent of taking the life of his assailant, whether the danger is real or only apparent."

We think the law is well settled in this State that where a man is assailed and he takes his assailant's life, in order to make out a case of self-defense all that is necessary for him to show, as was said in the *Mackin case,* is, that there was by the conduct of his assailant induced in him a reasonable and well grounded belief that he was at the time of the killing in apparent danger of losing his life or suffering great bodily harm,—that is, that he had in him, by the conduct of his assailant, in the language of the statute, incited the fears of a reasonable person,—and that he is not required to show, in order to make out a case of self-defense, in the language of said instructions, or either of them, that he acted, under the circumstances, as would have acted a man of "ordinary judgment and courage," or as an "ordinarily courageous man" would have acted under the same circumstances. We find nothing in the statute of this State or in the decisions of this court that makes it necessary that a man should be a reasonably brave or courageous man before he can avail himself of the right of self-defense. The right of self-defense is vouchsafed by the law to the timid as well as to the courageous. All that a man who has taken his assailant's life is bound to show in order to excuse himself is, that he did what a reasonable person would have been justified in doing under the same circumstances.

The eleventh and fourteenth instructions, we think, therefore, in the particular pointed out, were erroneous, and placed upon the plaintiff in error a burden, before he could

be held to have acted in self-defense in taking Huston's life, greater than the law imposed upon him.

We think, also, instructions Nos. 11 and 14 are subject to the criticism that they might have led the jury to believe that although the plaintiff in error, by the conduct of Bradford Huston, had induced in him a well grounded belief that he was in imminent danger of losing his life or suffering great bodily harm at the time he fired the fatal shot, in the opinion of the court that fear was inspired in the mind of a coward, and was not the fear of a reasonable person. The question whether the plaintiff in error fired the fatal shot while acting under the fears of a reasonable person or those of a coward was not a question for the court but a question for the jury, and the court should have given to the jury no instructions which could have intimated to them that the plaintiff in error was a coward, and in consequence of such cowardice fired the fatal shot.

We are also of the opinion that instruction 13 was rendered bad by reason of the reference contained therein to the defense interposed by the plaintiff in error as "what is claimed to be this self-defense." The case was very close upon the facts, and for the court to refer to the defense interposed by the plaintiff in error as a "claimed" defense might have had the effect to induce the jury to believe that the court looked upon the defense interposed by the plaintiff in error as a defense without merit and one which should be disregarded by the jury.

It is also assigned as error that the court erred in giving to the jury the People's fifteenth instruction. That instruction informed the jury that they might take into consideration the demeanor and conduct of the defendant "during the trial" in passing upon the credit which should be given the plaintiff in error as a witness in his own behalf. An instruction in that form was held to be reversible error in *Purdy* v. *People,* 140 Ill. 46, and in *Vale* v. *People,* 161 id. 309. In a case where the evidence of guilt was clear

and there was but little, if any, conflict in the evidence and
the testimony of the defendant was not vital to his defense,
an instruction in the form of the People's fifteenth instruc-
tion might not require a reversal of the judgment of con-
viction. In a case, however, where the evidence stands as
the evidence does in this case, the jury, for the reasons
given in the *Purdy case,* ought not to be instructed that
they have the right to take into consideration the demeanor
and conduct of the defendant "during the trial," when pass-
ing upon the weight which should be given to his testimony
as a witness. The giving of plaintiff's fifteenth instruction,
under the evidence disclosed in this case, was reversible
error.

There is one other question which arises upon this rec-
ord which may arise on another trial, and we therefore
deem it proper to consider and dispose of the same.

After the evidence was closed, the State's attorney, by
permission of the court, entered a *nolle prosequi* as to the
fourth count of the indictment,—that is, the count of the
indictment charging manslaughter,—and it was contended
upon the motion in arrest of judgment that the disposition
of the fourth count by the court was equivalent to a verdict
of not guilty of the charge of manslaughter, and as the jury
found the defendant guilty of manslaughter the court could
not render a valid judgment of conviction upon the verdict,
as the record showed the defendant had been previously ac-
quitted, upon the record, of the crime of manslaughter. We
do not agree with this contention for two reasons: First,
under the authority of *Dalton* v. *People,* 224 Ill. 333, the
question of former acquittal could not be raised by a motion
in arrest of judgment. In that case the indictment con-
tained four counts. The court, at the close of the evidence,
instructed the jury to find the defendant not guilty upon the
first and third counts of the indictment. No verdict was
rendered at the time the instruction was given, but the di-
rection was taken as a withdrawal of the first and third

counts and the trial proceeded. The defendant was convicted upon the second and fourth counts of the indictment, and it was contended, upon motion in arrest of judgment, that the instruction of the court to find the defendant not guilty upon the first and third counts of the indictment amounted to an acquittal of the defendant of the offense charged in the second and fourth counts of the indictment, and that the defendant having been once in jeopardy on that charge could not be again tried and convicted. The court, on page 338, said: "No question of that kind was raised until the motion in arrest of judgment, and while a former acquittal may be proved under the plea of not guilty, (*Hankins* v. *People,* 106 Ill. 628,) it would be a new practice to allow a defendant to await the verdict, and then, by a motion in arrest of judgment, say, in effect, that he was not bound to make answer to the indictment because he had previously been tried and acquitted of the same offense. Even if the defense could be made in that way, there was no acquittal of the charge contained in the second count. There was no verdict until the final one by which defendant was found guilty." And secondly, the entry of the *nolle prosequi* as to the fourth count of the indictment was not equivalent to a verdict of not guilty of the crime of manslaughter upon the other counts of the indictment. By the verdict of the jury the defendant was acquitted of the crime of murder. He may, however, upon the cause being re-docketed in the circuit court, be again put upon trial upon the remaining counts of the indictment for the crime of manslaughter.

The judgment of the circuit court of Hancock county will be reversed for the errors hereinbefore pointed out and the cause will be remanded to that court for a new trial.

*Reversed and remanded.*