(No. 32965.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARION JOHNSON, Plaintiff in Error.

*Opinion filed January 20, 1954.*

ALEX J. VICTOR, and JOHN S. GHENT, both of Rockford, and KARL YOST, of Morrison, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and ROBERT R. CANFIELD, State's Attorney, of Rockford, (WILLIAM R. NASH, FRED G. LEACH, and ROBERT L. BURNS, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Marion Johnson, was indicted by the grand jury of Winnebago County at the October, 1952, term of the circuit court. Counts 1, 2 and 3 of the indictment charged plaintiff in error with the murder of one Amos Floyd by shooting him with a pistol. The fourth count charged manslaughter. On arraignment, a motion was made to quash the indictment on the ground that the grand jury was not selected or drawn as provided by the Jury Commissioners Act. (Ill. Rev. Stat. 1951, chap. 78, pars. 24-35, incl.; Jones Ann. Stat. 107.249-107.258, incl.) The motion to quash was denied. On the day of the trial, December 8, 1952, and prior to the selection of a jury, plaintiff in error filed a challenge to the array on the ground that the prospective jurors had not been selected in accordance with the provisions of the Jury Commissioners Act. The challenge alleged that though the county

of Winnebago contained more than 140,000 inhabitants according to the last preceding national census, the judges of the courts of record of that county had not chosen jury commissioners as directed by section 1 of the Jury Commissioners Act; that the list of jurors had not been prepared as required by section 2 and that the jurors then appearing for service had not been drawn and selected conformably to the provisions of sections 8 and 9. The challenge to the array was heard and denied. The jury found plaintiff in error guilty of murder as charged and fixed punishment at 99 years in the penitentiary. Motions for a new trial and in arrest of judgment were overruled by the court. Sentence was pronounced and judgment entered upon the verdict. By writ of error a review of the sentence and judgment is sought in this court.

Several errors have been assigned and not argued. The effect, of course, of failure to argue assigned errors is a waiver of those matters. (*People* v. *Davis,* 412 Ill. 391; *People* v. *Smith,* 404 Ill. 125.) The only assignments of error presented for our consideration relate to the challenge to the array and the legal sufficiency of the evidence to sustain the conviction.

This case was tried in the circuit court of Winnebago County while the case of *People* v. *Nordell,* 414 Ill. 375, involving an appeal from the circuit court of the same county, was pending in this court and before a decision in the *Nordell case* had been made. Undoubtedly, because of the decision of this court in the *Nordell case,* plaintiff in error has abandoned his assignment of error that the trial court should have quashed the indictment because the grand jury was not selected and drawn as required by the Jury Commissioners Act. Our former opinion disposed of that matter adversely to the position taken by plaintiff in error in the trial court. But the *Nordell case* involved a situation wherein the validity of an indictment was challenged because of an alleged illegally constituted grand jury. This

appeal involves the validity of a trial jury and its power to sit in judgment upon an accused under the same facts present in the *Nordell case.* It is undisputed that Winnebago County attained a population in excess of 140,000 inhabitants as shown by the census taken in 1950. It is also undisputed that the judges of the courts of record of that county had not appointed jury commissioners under the provisions of section 1 of the Jury Commissioners Act at the time of the trial of this cause in the circuit court; that jury lists had not been made up as directed by section 2 of the act; that the jurors present in court had not been drawn pursuant to sections 8 and 9 and that the jurors had been selected, drawn and summoned pursuant to the provisions of an act concerning jurors. (Ill. Rev. Stat. 1951, chap. 78, pars. 1-11, incl.; Jones Ann. Stat. 107.224-107.234, incl.) This appeal therefore, involves the same situation as that presented in the *Nordell case* except that here the validity of the trial jury rather than the grand jury is questioned. Plaintiff in error contends that notwithstanding the decision of this court in the *Nordell case,* the rights of plaintiff in error have been seriously infringed by forcing him to trial before an illegally constituted jury; that while the distinction pointed out by this court in its former opinion between situations where there has been noncompliance with the jury law once it has been put into operation and those in which the law has not been put into actual operation might properly obtain so far as grand juries are concerned, the same distinction does not apply to the present case where a trial jury is involved.

We have carefully considered the argument of plaintiff in error but can find no reasonable or logical basis for reaching a different result here. A defendant charged with a crime is entitled to substantial compliance with the law relative to the selection of the grand jury which presents the formal accusation against him. He is also entitled to the same substantial compliance with the law relative to

the selection of the jury which hears his case. Both rights are substantial and of equal importance to an accused. The Jury Commissioners Act provides for the method of selecting both grand jurors and petit jurors in counties where the population is 140,000 or over. In such counties grand juries are to be drawn and certified from the same jury lists and in the same manner as trial juries. Prior to the passage of the Jury Commissioners Act (which originally applied only to counties having a population of 250,000 or more) the only method provided for selecting and summoning either grand or petit jurors was found in the Jurors Act. (Ill. Rev. Stat. 1951, chap. 78, pars. 1-23, incl.) After the Jury Commissioners Act was amended in 1939 to make it applicable to counties of 140,000 population, the Jurors Act still contained the provision that it applied in counties up to 250,000 inhabitants. As stated in the opinion in the *Nordell case*, the Jury Commissioners Act was not amendatory of the Jurors Act but must be regarded simply as supplemental legislation, and the authority of the board of supervisors under the Jurors Act to provide jury lists by the method prescribed must be regarded as continuing until such time as commissioners have been appointed and have entered upon their duties pursuant to the Jury Commissioners Act. As observed in our former opinion, an interval of time must necessarily elapse between the date when the population has, in fact, been attained and the time when that fact becomes known and the provisions of the Jury Commissioners Act are to be put into operation. We decided that to make the validity of indictments depend on the date when the population of a county had actually passed 140,000 or a reasonable time thereafter would result in uncertainty and confusion. To make the validity of convictions by trial jury dependent upon the same obscure facts would lead to the same unsatisfactory result. The jury in the instant case was selected and empanelled by the only method provided by statute until the actual

placement in operation of the administrative machinery prescribed by the Jury Commissioners Act. It constituted a valid and legal jury to try the accused. The trial court properly denied the challenge to the array.

Plaintiff in error further contends that the evidence shows that he acted in self-defense and that the jury should have found him not guilty for that reason. The evidence shows that the shooting occurred in a private home early in the morning of August 24, 1952, where ten colored persons, including plaintiff in error and the deceased, were present at a party. Before assembling at this place most of those present had been drinking at various clubs and bars. Most of them continued to drink after arriving at the party. Plaintiff in error had on his person a fully loaded seven-shot automatic pistol which he had purchased only a day or two previously. At the time of his arrival he carried it inside his belt but later he transferred it to his coat pocket. Amos Floyd, the deceased, and plaintiff in error had never met prior to attending this social affair. There was nothing in their conduct toward one another prior to the shooting which indicated any bad feeling. So far as the evidence shows, Amos Floyd was unarmed.

Not all persons present saw the actual shooting when it started but all who testified agreed that the shots were fired in rapid succession and that just after the shooting plaintiff in error stood with his gun in his hand and that deceased had slumped to the floor. Plaintiff in error was also thrown to the floor by persons who sought to disarm him. It appears that all seven cartridges in the pistol were fired. One of the bullets struck John Love, wounding him but not seriously, and five took effect in the body of Amos Floyd causing his death. Just prior to the shooting there was no argument of any kind and no words passed between Floyd and plaintiff in error.

It appears from the testimony of those who saw the shooting that just before it happened plaintiff in error was

seen standing with his pistol in his hand and that Amos Floyd, who had been seated only two or three feet away, in rising, struck at plaintiff in error. The first shot was fired at the instant this blow was launched and the firing continued rapidly until the gun was emptied. At the time the parties were only two or three feet apart and the shots were fired at point-blank range. Whether the blow struck by Floyd actually landed is problematical. It appears to have produced no injury to plaintiff in error. Plaintiff in error testified that he had gone to a table to pour himself a drink; that as he did so his back was to Floyd; that he heard someone say "Don't do that" and felt a blow on the back of his head; that he did not know who hit him; that when he came to himself he was on the floor; that he did not remember taking the pistol out of his pocket and recalls nothing of the occurrence after feeling the blow on the back of his head; that when he found himself on the floor the gun was in his hand.

Plaintiff in error does not contend that the court erred in instructing the jury concerning the law of self-defense. His position is that the evidence demonstrates that he acted in the necessary defense of his person and that the jury should have found him not guilty on that ground. Whether a killing is justified under the law of self-defense is always a question of fact to be determined by the jury under proper instructions. (*People* v. *McClain,* 410 Ill. 280; *People* v. *Smith,* 404 Ill. 125.) Under the law of this State a person under the reasonable apprehension of the danger of losing his life or of suffering great bodily harm has the right, in self-defense, to take the life of his aggressor. (*People* v. *Duncan,* 315 Ill. 106; *People* v. *McGinnis,* 234 Ill. 68; *Maher* v. *People,* 24 Ill. 241.) When a person is assaulted in such a manner as to induce a reasonable belief that he is in danger of loss of life or great bodily harm he may exercise his right of self-defense whether the danger is real or only apparent. (*People* v. *Organ,* 345 Ill.

339; *People* v. *Stapleton*, 300 Ill. 471.) But the test remains one of reasonableness, and whether the facts and circumstances were such as to induce a reasonable apprehension of loss of life or great bodily harm must be decided by the jury. The test of self-defense is not what the jury thinks a reasonable man would believe but rather what the defendant, as a reasonable man, believed. )(*People* v. *McClain*, 410 Ill. 280; *People* v. *Grady*, 381 Ill. 224.) Once the jury has decided the fact and reached the verdict this court will not disturb that finding unless the evidence is palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of the defendant's guilt. *People* v. *McClain*, 410 Ill. 280; *People* v. *Smith*, 404 Ill. 125.

The evidence in this record clearly shows that plaintiff in error was not under a reasonable apprehension of death or great bodily harm when he shot the deceased. By plaintiff in error's own testimony he did not even know who struck him. The evidence also shows that no threats were made. The deceased was unarmed. The shots began contemporaneously with the launching of the blow by the deceased. It was not such a blow as would cause death or great bodily harm or induce a reasonable belief of the likelihood of such results. The fair inference from all the testimony is that the deceased, in striking out, was attempting to disarm plaintiff in error who was already standing with a drawn pistol in his hand. The jury was justified in denying the plea of self-defense.

We find no merit in the final contention that there is not sufficient evidence of malice to warrant a verdict of guilty of murder. Plaintiff in error shot deceased repeatedly at extremely short range under circumstances where death would most probably result. Every sane man is presumed to intend all the natural and probable consequences of his own deliberate act. If one voluntarily and wilfully does an act, the direct and natural tendency of which is to

destroy another's life, the conclusion, in the absence of qualifying facts, is that the destruction of the other person's life was intended. It is not necessary, to justify a conviction of murder, that a person shall have deliberately formed an intention to kill. It is sufficient if, at the instant of the assault, he intended to kill the party assaulted or if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice. (*People* v. *Marrow,* 403 Ill. 69.) Under either theory the jury was justified in finding that the killing in this case was done with malice aforethought.

The judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*