### JOHN ENRIGHT

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa January 15, 1895.*

1. HOMICIDE—*apparent danger may justify killing.* The taking of life is justified where it is apparently necessary to preserve one's life or prevent him from receiving great bodily harm, and the existence of actual danger is not essential.

2. INSTRUCTIONS—*error in, not corrected by other instructions.* An instruction which limits the right of self-defense, in a prosecution for murder, to *actual* danger, is not rendered harmless by giving, at the request of the accused, instructions stating the law correctly.

3. SAME—*accused entitled to instructions to fit his defense.* One accused of murder has the right to instructions as to self-defense, where his own testimony sustains that defense.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

CHARLES HUGHES, for plaintiff in error.

MAURICE T. MOLONEY, Attorney General, T. J. SCOFIELD, M. L. NEWELL, JACOB J. KERN, States Attorney, and R. W. MORRISON, for People.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court :

At the February term of the Criminal Court of Cook county, 1894, plaintiff in error was convicted of the crime of manslaughter, and sentenced to the penitentiary at Joliet for a term of sixteen years. The indictment was for murder, charging the killing of one Peter Seipel on December 3, 1893, by stabbing him in the neck with a knife.

It appears, from the evidence, that the deceased and defendant met in the forenoon of the day of the killing, which was Sunday, near the dwelling of the latter, where he was removing snow from the sidewalks. The deceased and other parties remained about the premises during the day, playing cards and drinking beer, the defendant once, and perhaps oftener, drinking with them. In the afternoon Seipel was in the defendant's house, and had some conversation with him and his wife. The parties were, up to that time, perfectly friendly, and there is nothing in the testimony tending to show any quarrel or ill-feeling between them prior to about half-past nine o'clock in the evening, when the cutting occurred. The only testimony in the record showing how the parties then met is that of the defendant himself, and his testimony and that of his daughter Maggie is the only evidence explaining the immediate circumstances attending the killing. There is no conflict in their evidence as to the fact that the parties were, at the time, in the sitting room of defendant's house, no one else being there. The

155—3

daughter swears: "I left the house that afternoon about half-past four, went to a wake, and returned at half-past nine. Yes, there is a driveway between 188 and 190 Mather street. We go in our house by a side door on the driveway. When I returned and approached that door it was open. Father was standing there, and Peter. * * * I seen father take his knife out and open it with his teeth and strike Peter. I think he struck him in the neck. I saw father have his right hand on Peter's shoulder. Father held knife in left hand." She heard nothing said by either. She said on cross-examination: "I don't know what they were doing, nor what they said, if anything. Both were standing when I stepped to the door. They were about three or four steps from the door." She further stated that after her father struck the blow the deceased ran out of the house in the direction of the barn. There is no conflict in the evidence as to the fact that he was found shortly afterwards in a dying condition from a wound in the right side of the neck, severing the jugular vein and carotid artery. The defendant, in his own behalf, testified, that while sitting in the room alone, his wife having retired, Seipel rushed in and attacked him, knocking him down twice; that he had something in his hand like a large lump of coal; that he was drunk and very much enraged. That his testimony tended to prove that the killing was done in self-defense is not denied. The testimony of other witnesses is to the effect that Seipel went to the defendant's house about that time, and that he was more or less intoxicated.

In view of the testimony of the daughter, the jury, if they had been properly instructed as to the law of self-defense, would have been justified in disbelieving the testimony of the defendant as to his being assaulted by the deceased. But his defense was justifiable homicide in self-defense—that is, to save himself from great bodily harm or loss of his own life at the hands of the deceased he struck the fatal blow. His own testimony, at least,

tended to establish that defense, and he had a clear right to have the jury correctly instructed as to the law applicable to that defense.

The tenth and eleventh instructions given at the instance of the prosecution are as follows :

10. "The jury are instructed, as a matter of law, that if a person kill another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the other was absolutely necessary, and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before any mortal blow was given.

11. "The court instructs the jury, as a matter of law, that before a person assailed is justified in taking life, the circumstances must be such that the taking of the assailant's life was necessary to preserve his own life or to prevent his receiving great bodily harm."

Both these instructions limit the right of self-defense to actual danger, no matter how threatening may be the appearances. A case cannot be readily suggested in which one relying upon the law of self-defense could prove that the killing was "absolutely necessary" to save his own life or avoid great bodily harm. We are not able now to conceive of a case in which a defendant could do more than prove that the killing was *apparently* necessary. At all events, this court has unqualifiedly condemned the rule announced in these instructions in the following cases: *Campbell* v. *People*, 16 Ill. 17 ; *Hopkinson* v. *People*, 18 id. 264; *Schnier* v. *People*, 23 id. 11; *Maher* v. *People*, 24 id. 241; *Roach* v. *People*, 77 id. 25; *Steinmeyer* v. *People*, 95 id. 383; *Panton* v. *People*, 114 id. 505. In these and perhaps other cases judgments of conviction by trial courts have been reversed because of the error in giving such instructions.

But it is said, the error in this case was cured by one or more of the instructions given at the instance of the

defendant, which stated the law correctly. Conceding, as must be done, that the jury were unequivocally and positively misdirected at the instance of the prosecution, and admitting that they were properly instructed on behalf of the defendant, the question, as has been frequently said, remains, which did the jury follow? When the language of an instruction is inaccurate, and, standing alone, might have misled the jury, others in the series may explain it, remove the error or render it harmless. But that can never be so when two instructions are in direct conflict with each other, one stating the law correctly and the other incorrectly. The point here urged was made in *Steinmeyer et al.* v. *People, supra,* but we said: "It is true, the instructions on the same subject, given on behalf of the defendants, laid down the law correctly. But that was not enough. The jury may have disregarded the instructions for the defendants and followed those given for the People." In that case the judgment below was reversed for the same error in an instruction given on behalf of the People that was committed in this case by giving the tenth and eleventh. No tenable ground has been suggested, and we have been able to discover none, upon which it can be fairly said the giving of these instructions was not prejudicial error.

Some minor objections to the ruling of the trial court in the admission of testimony and giving and refusing instructions are urged, but we do not consider them of controlling importance.

For the error indicated the judgment of the Criminal Court will be reversed.

*Reversed and remanded.*