THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALEX NOVICK, Plaintiff in Error.

*Opinion filed December 16, 1914.*

1. CRIMINAL LAW—*what not essential to the crime of burning property to defraud an insurance company.* The intent is the controlling element of the crime of burning property to defraud an insurance company, and the crime is complete if the act is done with the intent to defraud the insurance company even though the property is not covered by a valid policy, and it is therefore not material that the policy misdescribes the location of the building.

2. SAME—*corporate existence of corporation may be proved by oral testimony if no objection is made.* In a criminal prosecution for burning property with intent to defraud an insurance company, the corporate existence of the company may be proved by oral testimony if no objection is made to such proof.

3. SAME—*if instructions are contradictory one cannot cure error in another.* Instructions may supplement each other and should be considered as a series, yet each one must state the law correctly

as far as it goes and all should be in harmony so the jury will not be misled, but if the instructions are contradictory one instruction cannot cure error in another.

4. SAME—*instruction in criminal case should not assume a disputed fact.* In a prosecution for burning property to defraud an insurance company it is error to assume in the People's instructions that the building was set on fire, where the crucial question in the case is whether the origin of the fire was accidental, as contended by the accused, or intentional, as contended by the People.

5. SAME—*knowledge and consent are not equivalent to aiding, abetting and assisting.* An instruction in a prosecution for burning property with intent to defraud an insurance company is erroneous which states that the accused is guilty as a principal if the building was burned with his knowledge and consent, as there is a clear distinction between consenting to a crime and aiding, abetting or assisting in its perpetration.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. W. N. BUTLER, Judge, presiding.

J. L. THOMPSON, and J. B. LEWIS, for plaintiff in error.

P. J. LUCEY, Attorney General, M. S. WHITLEY, Special State's Attorney, GEORGE P. RAMSEY, C. H. LINSCOTT, W. F. SCOTT, and CHARLES E. COMBE, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, Alex Novick, was tried and convicted at the April term, 1914, of the circuit court of Saline county for the crime of burning property to defraud an insurance company and sentenced on this verdict to the penitentiary. The case has been brought to this court by writ of error.

March 5, 1912, plaintiff in error resided in the village of Dorrisville, in Saline county, in a building which he owned and occupied as a residence and in which he also conducted a general store and meat market. The building consisted of four rooms, facing east on a north and south road. The south front room was occupied for the store. Just back of it was a small room used for storage purposes.

The north back room was a kitchen, and the north front room was used for a bed-room and sitting room. At that time there were three stoves in the building,—one in the store, one in the bed-room and one in the kitchen,—the pipes of which all ran into the same flue in the partition between the rooms. On the date last mentioned three fires occurred in the building,—the first in the morning, between nine and eleven, the second an hour or two later, and the third some time after half-past three in the afternoon. This last fire destroyed the building and contents. The testimony tends to show that the weather was quite cold that day and there was snow on the ground; that there was a hot fire in two stoves in the morning, one being red-hot. When the first fire occurred in the forenoon, the testimony is to the effect that plaintiff in error called for help and with the assistance that came extinguished the fire. The evidence is not very clear as to just what took place at this first fire or how much or what part of the building was burned at that time. The testimony which, it is argued, tends to incriminate plaintiff in error has reference to the second fire. A good deal of testimony was taken as to what occurred in and about the building at that time, and this testimony is quite contradictory, especially with reference to what plaintiff in error said and did. John R. Stone, the village marshal of Dorrisville, testified that he was notified on the telephone of the second fire and came over to the store before it was put out; that when he reached there he found several persons standing outside and the plaintiff in error in the store; that he asked the latter where the fire was, and the plaintiff in error said that it was in the other room; that he. (Stone) then said, "Well, show us where it is and we will put it out," and plaintiff in error replied, "Too much smoke," and said to him, "Let it burn and I will give you ten dollars;" that witness then opened the door to the room where the fire was and the smoke cleared out. Plaintiff in error on the stand denied

that he had this conversation with the marshal. No one else heard it, although it seems that several persons were in and about the store at the time. Several other witnesses testified that plaintiff in error did not attempt in any way to put out this second fire, some saying that he walked up and down the porch and acted as if he were crazy or drunk; others stating that he seemed to be entirely indifferent as to what was going on. Quite a number of witnesses testified in his behalf that he assisted in extinguishing the fire. After it was extinguished plaintiff in error gave a cigar to each of those who helped. The testimony is to the effect that during both the first and second fires plaintiff in error requested persons who attempted to take goods out of the building not to do so, stating they would be stolen if they were carried out, as had happened at a fire not long before in the same village to goods taken out of the building. After the second fire J. B. Belt, who represented the insurance company which had insured the goods and building in question, came to the house and had a talk with plaintiff in error. From his and other testimony in the record it appears that after the second fire they found a hole burned in the floor of the room used for a bed-room. There was also evidence that the partition and ceiling of the bed-room, if not in the other rooms, were burned. Belt testified that in his talk with plaintiff in error he told him that if he (plaintiff in error) burned the building no insurance could be recovered, and asked him for the insurance policies, and plaintiff in error said they were at the bank. It appears from the evidence that plaintiff in error's wife had carried the policies away with her when she left after the first fire. The testimony tends to show that she was in a delicate condition and became somewhat excited, and for that reason she was advised to go to the home of one of the neighbors. The third fire, which destroyed the building and contents, occurred late in the afternoon when plaintiff in error was not at home. He testified that he had

gone on horseback to Harrisburg, about a mile and a half
distant, to see about a wagon left there for repairs, and
when he found it was not ready went to Gaskins City to see
a niece who was very sick and stayed there until after five.
When he returned to Dorrisville the building and contents
had been destroyed. There is no contradiction of his tes-
timony that he was in Harrisburg and Gaskins City as he
stated and that he was not in or about the building at the
time of the third fire. The man he left in charge of the
store was not called as a witness, plaintiff in error claiming
he could not be located.

There is no direct proof in the record as to how the
fires originated. The testimony of some of the witnesses
for plaintiff in error emphasized the fact that one of the
stoves was red-hot. Others testified they saw no connection
between the stove and pipe and the fire. Plaintiff in error
himself stated that his attention was first attracted by smoke
coming through the crack of the door, and that he then
noticed fire under the stove and the paper on the wall crack-
ing. The State contends that the evidence tends to show
that the building was set on fire by plaintiff in error or
some other person under his direction, while the defense
contends that all three fires were accidental. Plaintiff in
error had the building insured for $650, the merchandise
and fixtures for $1275 and the household goods for $350,—
a total of $2275. Counsel for plaintiff in error argue that
the evidence shows that the total loss by fire to the build-
ing and contents was $2761.

Counsel for defendant in error insist that the certificate
of the trial judge fails to show that the bill of exceptions
contains all the evidence or all the rulings of the court,
and that therefore this court cannot pass on the weight of
the evidence, or the propriety of giving or refusing certain
instructions, or the correctness of the rulings of the trial
court which are questioned by plaintiff in error. With this
we cannot agree. The fact appears affirmatively from the

record that the trial judge certified that the bill of exceptions contained all the evidence and the rulings of the court. See *Hutchinson* v. *Bambas,* 249 Ill. 624; *Grand Lodge A. O. U. W.* v. *Ehlman,* 246 id. 555; *People* v. *Henckler,* 137 id. 580; *Harris* v. *Miner,* 28 id. 135.

Counsel for plaintiff in error contend that there is a fatal variance between the proof as to ownership of the building and the description as found in the insurance policy. The proof shows that the building was located on lot 1 in block 15, in Sloan's First addition to Dorrisville; the policies of insurance described it as being on lot 1 in block 16, in said addition. This indictment was founded on section 14 of the Criminal Code. The intent as to the crime in this case is the controlling element. The crime is complete if the act is done with intent to defraud any insurance company, even though the property attempted to be destroyed is not covered by a valid policy or one that could be enforced by law. *McDonald* v. *People,* 47 Ill. 533; *Mai* v. *People,* 224 id. 414.

It is further argued in this connection that no proof was made as to the incorporation of the insurance company. It was assumed by both parties in introducing their evidence that the insurance company was duly incorporated, and no objection was made as to this manner of proof. In a criminal prosecution for an offense committed against a corporation, the corporate existence, if no objection is made, may be proved by oral testimony, as it was here. 3 Ency. of Evidence, 604; *Reed* v. *State,* 15 Ohio, 217; *People* v. *Burger,* 259 Ill. 284.

Counsel further argue that the evidence was not sufficient to justify a conviction. While we do not agree with this contention, the evidence was of such a character that the rulings as to the evidence and the giving and refusing of instructions should have been accurate. The eighth instruction given for the People reads:

"It is not necessary, in order to secure a conviction in this case, that the prosecution prove or that the evidence show that the defendant, Alex Novick, was present at the time the property was set on fire, but it is sufficient if the jury believe from the evidence, beyond a reasonable doubt, that before it was set on fire he had advised, aided or encouraged the thing to be done and that he had consented that it should be done, then and in such case he would be just as guilty, under the law, as though he had done the act with his own hand."

Plaintiff in error argues that this instruction assumes that the building was set on fire. One of the crucial questions in the case was the origin of the fire,—whether it was caused by accident or intention. This court has repeatedly held that where facts are controverted and the evidence is conflicting, it is error to assume such controverted facts to be true. (*Chambers* v. *People,* 105 Ill. 409; *Hellyer* v. *People,* 186 id. 550; *Foglia* v. *People,* 229 id. 286; *People* v. *Feinberg,* 237 id. 348; *People* v. *Harris,* 263 id. 406.) Counsel for the State argue that all the evidence showed that the building was burned, consequently it must have been set on fire, and that this instruction assumed nothing more than that the building was burned. With this we cannot agree. The instruction manifestly assumes that the building was intentionally set on fire by some person as an active agent, and not simply accidentally burned. People's instructions 8 and 9 were erroneous in the same particular, in assuming that the building was set on fire. The modification in plaintiff in error's instruction 42 also assumed the same controverted fact. It is the province of the jury, and not of the court, to pass on the sufficiency of evidence as to questions of fact, and it is difficult to tell what influence the giving of these instructions had upon the jury. It is argued, however, by counsel for the State that other instructions given stated the law correctly on this point and the jury were therefore not misled. It is true,

instructions may supplement each other and may be considered as a series, yet each one must state the law correctly as far as it goes, and all should be in harmony, so that the jury may not be misled. (*Ratner* v. *Chicago City Railway Co.* 233 Ill. 169.) When instructions are contradictory one cannot cure the error of the other, since it is impossible to tell whether the jury followed the one laying down the correct rule of law or the erroneous one. (*Enright* v. *People,* 155 Ill. 32; *People* v. *Lee,* 248 id. 64.) These instructions stated the law incorrectly, and even though there may have been other correct instructions on the same subject it is impossible to tell which the jury followed.

Instruction 6 was also erroneous in instructing the jury that plaintiff in error was guilty as principal if the building was burned with his knowledge and consent. Such is not the law. This court has stated that there is a plain distinction between consenting to a crime and aiding, abetting or assisting in its perpetration. "Aiding, abetting or assisting are affirmative in their character. Consenting may be a mere negative acquiescence not in any way made known at the time to the principal malefactor. Such consenting, though involving moral turpitude, does not come up to the meaning of the words of the statute." *White* v. *People,* 81 Ill. 333; *Jones* v. *People,* 166 id. 264.

The giving of the above instructions was reversible error. Other errors are urged as to the giving and refusing of instructions and the admission of evidence, none of which we find it necessary to consider in this opinion.

The judgment of the circuit court is reversed and the cause remanded.                    *Reversed and remanded.*