(No. 30681.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CORRINE JOHNSON MILLER, Plaintiff in Error.

*Opinion filed May 19, 1949—Rehearing denied September 20, 1949.*

LONDRIGAN & LONDRIGAN, (WILLIAM F. FUITEN, of counsel,) both of Springfield, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, and GEORGE P. COUTRAKON, State's Attorney, (LAWRENCE SWINYER, and NELSON O. HOWARTH, of counsel,) all of Springfield, for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

The plaintiff in error, Corrine Johnson Miller, was indicted November 12, 1947, by the grand jury of Sangamon County for the crime of murder, and, on February 21, 1948, upon a trial by jury was found guilty of the crime of manslaughter and sentenced to the penitentiary for a term of not less than one year nor more than fourteen years. She was charged with killing one Ruby Lee Geter by stabbing her with either a knife or a fingernail file.

The essential facts surrounding this case are substantially as follows: Plaintiff in error and her husband and a niece by the name of Blackman went to a tavern in the city of Springfield on the evening of October 20, 1947. At that time the deceased and some of her friends were already in the bar, and a quarrel immediately arose between the members of the party of the deceased and the niece of the plaintiff in error. While this affray was in progress the plaintiff in error and her husband left through the front door of the tavern to the sidewalk, and were followed shortly thereafter by the deceased and members of her party. According to the evidence, which is highly conflicting, the deceased accused the plaintiff in error of permitting the Blackman girl to harbor the boy friend of the deceased, which charge the defendant vigorously denied, and then, it is claimed, the deceased attempted to assault the defendant with a broken whisky bottle, and the latter, in defend-

ing herself, made a pass at the deceased with a nail file, which is supposed to have been the weapon which caused her death some half an hour later.

As a matter of fact the record is full of extraneous facts which do not have much bearing upon the homicide in question. The affray inside of the tavern was not participated in by the defendant, and after the claimed attempted assault upon the accused by the deceased outside of the tavern another affray took place by which the deceased was chased by several other persons down the street a few blocks, when she collapsed, and died shortly thereafter. The defendant, in addition to claiming that if she wounded the deceased it was done in self-defense, offered evidence tending to show that the deceased was a woman of a vicious and quarrelsome disposition, a fact known to the defendant, and also that deceased was a powerful woman, being some five feet nine inches in height, while the defendant was a small person, but five feet two inches tall.

There are many other details set forth in the briefs, which are unnecessary to discuss, as the judgment must be reversed upon instructions given by the court upon the issue of self-defense. Before commenting upon these instructions we might suggest that altogether fifty-two instructions were given by both parties, twenty-three for the People, and twenty-nine for the plaintiff in error. This is an unreasonable number of instructions to require a court to read and pass upon in the short interval between the closing of a case and arguments to the jury. It is far better that a few well-considered and accurate instructions be given than to cover a great number of miscellaneous principles in instructions which have no application to the evidence. No doubt the excessive number of instructions offered tended to produce the errors discussed hereafter.

Upon the issue of self-defense, the People offered, and the court gave, the following instruction: "The Court instructs the jury, that if a person kill another in self-defense,

it must appear that the danger was so urgent that, in order to save her own life, or to prevent her receiving great bodily harm, the killing of the other was absolutely necessary. A bare fear of any of these offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing; it must appear that the circumstances were sufficient to excite the fears of a reasonable person and that the party killing, really acted under the influence of these fears, and not in the spirit of revenge." This instruction is undoubtedly erroneous, and has been so held since the case of *Campbell* v. *People,* 16 Ill. 17, its erroneous character being particularly and minutely discussed in *Enright* v. *People,* 155 Ill. 32.

The vice of this instruction consists in the requirement that to constitute self-defense the danger to the defendant must actually exist before she may exercise such right of self-defense, whereas the law is clear, not only by our decisions but also under the statute, that the true test is what the defendant, acting as a reasonable person, believed was necessary,—not whether the jury believed from the evidence that it was necessary, or apparently necessary, to kill his adversary to save his life or prevent great bodily harm. An instruction in the form of People's instruction No. 17, as set out above, has been condemned in *People* v. *Clark,* 368 Ill. 183; *People* v. *Turner,* 385 Ill. 344; and *People* v. *Arcabascio,* 395 Ill. 487.

An instruction in the nature of People's instruction No. 20, which is similar to instruction No. 17, was condemned in *People* v. *Turner,* 385 Ill. 344. It is urged, however, by the People that the instructions as a series correctly state the law, and we have held where such is the fact, and the error is not prejudicial, the judgment will not be reversed, but not so when the instructions are contradictory. It is true that a number of instructions were given by plaintiff in error which correctly stated the law with reference to self-defense, and her right to act upon

reasonably grounded fears that her life was in danger, or that she was liable to receive grievous bodily harm. This, however, does not cure the error in this case, because the court in People's instruction No. 17 specifically required that the danger to defendant be real, and the slaying of her assailant absolutely necessary, whereas, the instructions given on behalf of the defendant stated the correct rule, which is almost the direct contrary.

In the case of *Enright* v. *People,* 155 Ill. 32, the proposition of contradictory instructions upon self-defense was before the court, wherein it was urged that the error in giving a wrong instruction on self-defense was cured by one or more instructions given at the instance of the defendant. In that case we denied the curative effect of the defendant's instructions. We there said: "Conceding, as must be done, that the jury was unequivocally and positively misdirected at the instance of the prosecution, and admitting that they were properly instructed on behalf of the defendant, the question, as has been frequently said, remains, which did the jury follow? When the language of an instruction is inaccurate, and, standing alone, might have misled the jury, others in the series may explain it, remove the error or render it harmless. But that can never be so when two instructions are in direct conflict with each other, one stating the law correctly and the other incorrectly." Almost the same language was used in *Steinmeyer* v. *People,* 95 Ill. 383, and in *People* v. *Clark,* 368 Ill. 183. There can be no doubt that People's instruction No. 17 was erroneous, and, under the circumstances, highly prejudicial to plaintiff in error.

After the plaintiff in error was arrested she made a written statement to the police, and in this statement made substantially the same contention she made upon the witness stand, *viz.,* that if she struck and fatally wounded the deceased it was in her necessary self-defense. At the instance of the People the court gave instruction No. 7,

which referred to this statement as a confession, in the following language: "The Court instructs the jury, as a matter of law, that it is the duty of the jury to treat and consider any confession proved to have been made by the defendant precisely as any other testimony, if the jury believe the whole confession to be voluntary and true, they shall act upon the whole as true; but the jury may believe that which charges the defendant and reject that which is in favor if they see sufficient grounds in the evidence for so doing or find any inherent improbability in the confession; the jury are at liberty to judge of it by the other evidence and by all the circumstances in the case." So far as we are able to determine, there is no proof whatsoever that the defendant ever confessed to the commission of a crime. She claimed what was done was done in self-defense. The reference by the court to this exhibit as a confession of crime was error of a prejudicial character. *People* v. *Sovetsky,* 323 Ill. 133; *People* v. *Stapleton,* 300 Ill. 471; *People* v. *Arthur,* 314 Ill. 296; *People* v. *Manske,* 399 Ill. 176.

Many other exceptions are taken to rulings upon evidence, and other instructions, and to the competency of the details of the affray between other parties and the deceased until the latter was found dead in the street, some distance from the tavern. It is wholly unnecessary to go into all of these details, as the essential defense of the plaintiff in error was self-defense, and there was evidence tending to sustain such a defense, and, under such circumstances, she was entitled to an accurate statement of the law in regard to self-defense. People's instruction No. 17 did not correctly state the law with respect to self-defense, especially where the defendant claimed that the deceased was of a vicious and quarrelsome character, and was in the process of assaulting defendant with a deadly weapon. Likewise, it is clearly error to designate a statement made by the defendant that she acted in self-defense as a confession,

which is an admission of guilt. Neither of these errors could be corrected by a proper statement of the law, which would leave the record in the condition of having a correct statement of the law opposed by an incorrect statement of the same law in the same case.

The jury receives its information of the law from the court, and if it receives contradictory instructions upon an essential element in the case, the error is not cured if a correct statement of the law is given on behalf of the plaintiff in error, as it necessarily leaves the jury in the dark as to what the court declares the law to be on the particular issue under consideration.

In view of the foregoing, the judgment is reversed and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*