THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AMADOR CRESPO GUERRERO, Defendant and Appellant.

Nos. CR-63-91, CR-63-92.      Decided April 6, 1964.

*Ángel Cruz Cruz* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Adelina Vega Robles took the witness stand and testified that in the afternoon of February 18, 1959, she was in her kitchen doing the dishes when, glancing out the window, she saw a person standing in a guava-tree plantation looking towards her house. He held in his hand something that looked like a paper bag. Lying ill, almost at her feet in the kitchen, was Margarita Ortiz Rosario, her husband's niece, a woman of some forty years of age who often went to Adelina's house. The witness had never before seen the person in the guava plantation and she had never met him before. In court, she identified him as the defendant. Adelina's house was situated on the edge of the road from Toa Baja to Bayamón, and the property across the road, in which she saw the defendant, belonged to the United States Navy. It had a barbed-wire fence and was full of guava trees.

Adelina testified that the man kept looking at her house and whistled at her twice. The second time she asked him from a hall in the house, what did he want and the man answered that there were some eggs there. She told him to leave them there, that they were from her hens which lay their eggs there. Upon hearing this conversation Margarita said that she would go for them. The witness warned her not to go but the former rose, crossed the road, went past the barbed wire, and went in the direction of the eggs. Defendant walked ahead with Margarita following. The witness put on her shoes and followed her at a short distance. When she reached them, the defendant and Margarita were standing about forty feet from the fence. She told her: "Marcola, come with me." At that same moment the defendant took a step towards the witness and hit her with an object wrapped up in paper. She ducked and received the blow on the upper part of her arm which made her stumble. Defendant assaulted Margarita with the same object on the right mastoid region. With the blow Margarita fell to the ground and defendant fled through the guava trees. There was a single blow.

Adelina ran to her house calling for help and a man who was passing by helped to aid the victim who was lying on the ground bleeding through the mouth and nose. The eggs were there, as well as the object. The witness picked it up, unwrapped it, and saw that it was a pipe. After it was identified, it was offered and admitted in evidence as the murder weapon. With the aid of someone else the witness took Margarita to the Toa Baja hospital and was shortly thereafter told that the latter had died. The autopsy showed that the blow produced an inside hematoma in the encephalic mass affecting the cardiorespiratory centers of the brain, which was the cause of death.

The testimony of the witness, Adelina Vega Morales, was the only evidence concerning the facts that was presented during the first day of the trial. The other evidence concerned the autopsy. Up to the time when the court recessed that first day, the record does not disclose a motive for the crime. From other circumstances in the record, which need not be set out in detail, taken as a whole, we are not inclined to believe in the existence of a sexual or lustful motive, and apparently there was no robbery motive either.

When the court met for the second day of the trial, the Prosecuting Attorney asked for the withdrawal of the jury, which was ordered, and he then called Clemente Otero Ortiz, a witness. He announced that he would attempt to prove the voluntary nature of a confession made by defendant to said witness. The judge heard Clemente Otero Ortiz' testimony and held that it was a confession. Over the strong opposition of the defense, he directed that the evidence be heard by the jury. In front of the jury, the following testimony was given: (The Prosecuting Attorney examines.)

"Q. Do you know Amador Crespo Guerrero?

A. I met him during the prosecution of the case; since the day the case began here.

Q. Is he present in court?

A. There he is. (He points at defendant.)

Hon. Judge: When did you meet him?

A. Since the trial began on the day of the crime.

Q. Did you have any opportunity at all, yesterday, to talk to defendant?

A. I had a meeting with him.

Q. What was that meeting about?

A. I am the husband of Adelina Vega.

Q. You mentioned a meeting, at what time did it take place?

A. At one o'clock or a quarter to one.

Q. At noon?

A. In the afternoon. From one o'clock down it's in the afternoon.

Q. What was the meeting you had with this man about?

A. I went to him; he was having lunch. Then I went to Amador Crespo Guerrero and I told him: [Here, the record discloses the following conversation between the witness and defendant:]

[Witness] "You are a good man and perhaps you are not as guilty as the one who told you to kill; why don't you accuse the second party? He told me: [Defendant] 'I do not accuse him because if I lose this case, it's Rafael Molina I'm going to kill.' [Witness] I told him: you let yourself get involved . . . I told him: Why did you let yourself get involved? Accuse Rafael Molina Cosme who was the second party. He told me: [Defendant] 'I won't accuse him because I'm going to kill him.' [Witness] I told him: You should not do that. He told me: [Defendant] 'I'm going to kill him.' " The examination goes on like this:

"Q. Did he tell you why?

A. Because he is to blame for his being involved in the case.

Q. Did he tell you why?

A. He told me that he was to blame because he had been given some money. I told him: you should accuse him and blame him and he told me: 'No'.

Q. Did he tell you that he had been given money?

A. Yes, sir.

Q. Did you explain to him . . .

A. I explained to him.

Q. . . . prior to his knowing who you were?

A. I told him that I was Adelina's husband and the dead woman's uncle."

The examination and testimony of the witness continued to the effect that that conversation had taken place in a bar in Bayamón at lunch time during the noon recess the first day of the trial; that they talked peacefully without being disrespectful; that there was no argument; that defendant was not drunk; that defendant did not tell him that he was sick at that time; that there were no policemen about; that he did not hit defendant nor make him say that; that he

did not offer him money in return, or anything; neither did he threaten nor compel him; that defendant was at the table having lunch together with other persons and the witness called him aside and they talked. On cross-examination of this witness it became clear that the second party, Rafael Molina Cosme, and the witness were enemies on account of a suit regarding some land.

With this testimony of Otero Ortiz and the previous testimony of his wife Adelina, and with the results of the autopsy, and the pipe, the Prosecuting Attorney submitted his case. Defendant did not testify. His defense, through the testimony of two witnesses, was that on the afternoon in question he was together with other persons at Bajura beach in the town of Aguadilla. Those witnesses also said that they were together with defendant the first day of the trial while he was having lunch and they denied that any person had called him aside to talk. The jury rendered a verdict of guilty of murder in the first degree.[1]

## I

In one of the errors assigned on appeal by defendant against the judgment of conviction, he imputes an erroneous instruction regarding malice. At the end of the instructions describing the crime of murder and its elements, the trial court told the jury:

"I must point out to you, however, that in a murder prosecution The People is not bound to offer evidence concerning malice."

■ As long as the crime of murder is defined in our Code as the unlawful killing of a human being, with malice aforethought, and as long as it is a legal standard in our criminal procedure—of a constitutional nature among us—

---

[1] The minutes of the arraignment show that defendant was a resident of San Sebastián, married, had two children, and was a painter by profession.

for any defendant to be presumed not guilty and, hence, for the People to be bound to prove his guilt beyond any reasonable doubt, an instruction such as the one above copied is erroneous. It seems that in the past there has been some confusion in this regard among trial judges, but, undoubtedly, such an instruction insofar as the crime of murder is concerned, must be stricken from their books on instructions to the jury. This question was discussed at some length not long ago in *People* v. *Túa*, 84 P.R.R. 37 (1961), where we reviewed our former decision on this subject.

■ Notwithstanding that the aforesaid instruction was erroneous, we would not be inclined to reverse on that sole ground inasmuch as we consider that under the circumstances of this case no irreparable damage was caused. In the first place, the trial court had previously defined correctly the crime of murder in its two degrees, and had also spoken correctly as to the element of malice. Although the court stated that The People was not bound to prove malice, as a matter of fact The People introduced evidence concerning said element.

Pursuant to § 200 of the Penal Code, malice may be express or implied; express, where there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature; and implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. With the testimony of Adelina Vega Robles, if believed by the jury, The People contributed, at least, with an element of implied malice, that is, a killing with an instrument capable by itself of producing serious bodily injury, including death, under circumstances in which there was no appreciable provocation, apart from the weight it was allowed to give any admission made by defendant.

In the second place, the facts of this case do not present one of those situations where the main question to be deter-

mined is whether the crime committed was murder or voluntary manslaughter, in which case evidence of malice, or the lack of it, constitutes the decisive ingredient. Despite the foregoing, due to the circumstances of this case, the instruction challenged is erroneous and should not be transmitted to the jury in a murder prosecution.

## II

The remaining errors assigned concern the testimony of a witness, Clemente Otero Ortiz, which the trial court admitted as a *confession*, and the instructions given to the jury regarding said testimony. The court, in its instructions, said:

"In this case, ladies and gentlemen of the jury, through the testimony of witness Clemente Otero Ortiz you were given to consider and you heard a statement allegedly made by defendant to that witness where defendant admits having committed the crime with which he is charged for money paid to him by one Rafael Molina Cosme. In order that a confession may be utilized against a defendant, in order that it may be considered by the ladies and gentlemen of the jury, the latter must be convinced beyond a reasonable doubt that such confession of the crime is voluntary. In this case *the confession* in question, *made by defendant*, was made to a private person. I wish to tell you that even in this case where *the confession was made* to a private person and not to any agent of the government or of The People, you must be convinced beyond a reasonable doubt that *the confession which in the testimony of Clemente Otero Ortiz* he says defendant made to him, is a voluntary confession. Until you become convinced thereof you may not take it into consideration in such a way as to affect the outcome of this proceeding because if after analyzing the attendant circumstances you should deem that the statement or the confession is not a product of the will, of the desire, of the free and spontaneous will of defendant, you must reject *that confession* and decide this case and render a verdict, whichever it may be, in accord with whatever findings and conclusions you make from the rest of the evidence introduced."

The court continued instructing the jury regarding the elements to be taken into consideration in determining the voluntary nature of *"this confession"* and as to whether or not they could give credence to Clemente Otero Ortiz' testimony. If they deemed that the witness was telling the truth, they should then determine "whether *that confession made by defendant to Clemente Otero Ortiz* was a voluntary *confession* made to Clemente Otero Ortiz." The Court went on to give ample instructions regarding the element of voluntariness and such other elements as are applicable in the case of a defendant's extrajudicial confession.

As disclosed by the record, in view of the suppositions made by the witness Clemente Otero Ortiz himself as to the participation or guilt of a third party in the crime, and his insistence that appellant should accuse said third party, defendant stated that if he lost the case he would kill that person. Twice again he ratified that he would not accuse said person, that he would kill him.[2] When the witness is asked for an explanation to defendant's statement that he would kill that third party, the witness worded his explanation thus: "Because *he* is to blame for his being involved in the case." When he is again asked to explain the reason, the witness answers that defendant had told him that *he* was to blame because he had been given some money.

---

[2] The fact that, except for the meager import of an expression of defendant as to what he would do if he lost the case, this talk—the insistence of the witness to have him accuse another person, provoking defendant's answer that he would kill him instead—was evidence essentially immaterial to the facts being tried, cannot escape the sensibility of the trial judge. Furthermore, it constituted evidence seriously harmful to appellant, in a case where a defendant, while being prosecuted for murder in the first degree for the death of a person, stated his firm intention to kill another person, murder including, as it does include, subjective and conscientious elements on the intention and deliberate purpose to kill sometimes bordering on the abstract for the mind of a jury.

■ ■ In accordance with that record, we must agree with appellant that the trial court committed a serious error in instructing the jury to the effect that in that statement defendant admitted having committed the facts with which he was charged, because of the money that Molina Cosme had paid to him. In the first place, this was not exactly so according to what the witness said. In the second place, and although Otero Ortiz' testimony undoubtedly contains statements made by defendant in connection with the crime that were admissible against him, it was incumbent on the jury to make as many deductions and inferences as were permissible from defendant's statements; it was incumbent on the jury to weigh and value this testimony as a whole, in the light of the facts that gave rise to those statements; moreover, it was incumbent on the jury to construe and give some sense, taking into consideration all the ingredients of the testimony, to what the witness meant, and to whom defendant referred, in the last part of the testimony while he was trying to explain the reason for defendant's attitude towards that third party. When the trial court told the jury that through this witness' testimony defendant had admitted the facts with which he was charged—the commission of the crime of murder in the first degree—because he had been paid by Rafael Molina, which latter expression does not appear like that from the record, the judge transmitted to the jury a *fact* resulting from his own appraisal of that evidence and a product of his own findings with respect to this testimony. A judge is not allowed to do that.

■ The trial court also erred, now as a question of law, in labelling in its instructions Clemente Otero Ortiz' testimony as a *confession* of defendant. In the light of the rules accepted in law distinguishing a *confession* from other statements made by a defendant, links of evidence leading to his guilt, and which for that reason are permissible in

evidence as admissions, this testimony does not contain a confession of the crime charged. Consult: *People* v. *Casanova*, 77 P.R.R. 691, 695 (1954); *People* v. *Rivera*, 71 P.R.R. 115, 120 (1950); *People* v. *Sánchez*, 55 P.R.R. 342, 351 (1939) and cases cited therein; *Edwards* v. *State*, 100 S.E.2d 172, 174–175 (Ga.); *Johnson* v. *State*, 50 S.E.2d 334, 335 (Ga.); *People* v. *Miller*, 87 N.E.2d 649, 652 (Ill.).

To instruct the jury, in any case, that a testimony is a confession of the defendant, which in law means that he has admitted or recognized in an absolute manner the essential facts and elements of the crime with which he is charged, without it being a confession in law, constitutes a serious, reversible error of law. *Cf. Edwards* v. *State, supra; Johnson* v. *State, supra; People* v. *Miller, supra; Harris* v. *State*, 61 S.E.2d 135, 137; *McCloud* v. *State*, 143 S.E. 558, 560. Maguire, Evidence of Guilt 117 (1959).

■ Once the judge instructed the jury that Otero's testimony constituted appellant's confession, he transmitted to them the idea and his opinion that the latter accepted having committed the facts charged in the information, and this is prejudicial, particularly with reference to determining whether defendant committed murder in the first or second degree in view of the only other evidence as to the facts. It only remained for the jury to pass on the credibility of the witness and on the voluntariness of the so-called confession, which facts presented no controversy. Clemente Otero Ortiz' testimony should have been considered by the jury free from any remark, conclusion, description, or opinion on the part of the judge, and the jury, as the sole trier of the facts, should have weighed said testimony and derived therefrom the proper inferences and conclusions. Consult: *People* v. *Sanjurjo*, 73 P.R.R. 526 (1952); *People* v. *Bartolomei*, 70 P.R.R. 664 (1949).

This second error, committed in the instructions, is of such a prejudicial nature that it requires the granting of a new trial, and judgment to that effect shall be entered.

In Case M-59-551, which was tried by the court, the judgment of conviction sentencing appellant to imprisonment in jail for two years, for aggravated assault and battery, will be affirmed.